IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                              :
DENISE WALKER, et al.
                              :

    v.                        :      Civil Action No. DKC 2006-2295

                              :

MONTGOMERY COUNTY PUBLIC
  SCHOOLS, et al.             :
```

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case brought under the Individuals with Disabilities Education Act are (1) the motion for summary judgment filed by Denise Walker and her parents Donald and Michele Walker, (paper 10) and (2) the cross-motion for summary judgment filed by Defendants Montgomery County Public Schools ("MCPS") and Jerry Weast, Montgomery County Superintendent of Schools (paper 11). The issues are fully briefed and the court has reviewed the administrative record in its entirety. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.[1] For the reasons that follow, the Defendants' cross-motion for summary judgment will be granted and Plaintiffs' motion for summary judgment will be denied.

## I. The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and accompanying regulations, 34 C.F.R. §

---

[1] Plaintiffs requested a hearing with respect to their motion for summary judgment. (Paper 16). Because the issues are clearly presented in the briefs, however, this request will be denied.

300 *et seq.*, require all states that receive federal funds for education to provide each child between the ages of three and twenty-one, who has a disability, with a free and appropriate public education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). Maryland's regulations governing the provision of a FAPE to children with disabilities in accordance with the IDEA are found at Md. Code Regs. 13A.05.01.

The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process. *See Bd. of Educ. of the Henrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982). The FAPE must be reasonably calculated to confer "some educational benefit" on the disabled child. *See id.* at 207. The benefit must be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers. 20 U.S.C. § 1412(a)(5)(A); *see also* 34 C.F.R. § 300.550. The IDEA does not require that a school district provide a disabled child with the best possible education, *Rowley,* 458 U.S. at 192, or that the education maximize each child's potential, s*ee Hartmann ex rel. Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1001 (4th Cir. 1997), *cert. denied*, 522 U.S. 1046 (1998). The benefit conferred, however, must amount to more than trivial progress. *See Reusch v. Fountain,* 872 F.Supp. 1421, 1425 (D.Md. 1994) (*Rowley's* "'some educational benefit' prong will not be met by the provision of de minimis, trivial learning opportunities.") (citing *Hall ex*

*rel. Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir. 1985)).[2]

To assure delivery of a FAPE, the IDEA requires a school district to provide an appropriate Individualized Education Program ("IEP") for each child determined to be disabled.  20 U.S.C. § 1414(d).  The IEP is formulated by a team ("IEP Team") consisting of the parents or guardian of the child, a representative of the school district, the child's regular and special education teachers, an individual who can interpret results of evaluations of the child, and, when appropriate, the child himself or herself.  20 U.S.C. § 1414(d)(1)(B); Md. Code Regs. 13A.05.01.07(A).

If parents are not satisfied with the school's response, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6).  After such a complaint has been received, the parents also are entitled to request a due process hearing conducted by the state or local educational agency.  20 U.S.C. § 1415(f).  In Maryland, the Maryland Office of Administrative Hearings conducts

---

[2] Plaintiffs rely on *J.L. v. Mercer Island Sch. Dist.*, No. C06-494P, 2006 WL 3628033 (W.D.Wash. Dec. 8, 2006), to argue that amendments to the IDEA in 1997 established a higher standard as to what constitutes a FAPE than the Supreme Court set out in *Rowley*. In this circuit, courts continue to cite *Rowley* for the proper standard to determine whether an IEP offers a FAPE, and that standard requires only that a school district offer educational services reasonably calculated to confer an educational benefit that is more than *de minimus*.  *See County Sch. Bd. of Henrico County, Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 300 (4th Cir. 2005) (citing *Rowley*, 458 U.S. at 188-89; *M.M. ex rel. D.M. v. Sch. Dist. of Greenville County, S.C.*, 303 523, 526-27 (4th Cir. 2002).

the due process hearing.  Md. Code Ann., Educ. § 8-413; Md. Code Regs.  13A.05.01.15(C)(1).    Any party can then appeal the administrative ruling to federal or state court.  Md. Code Ann., Educ. § 8-413(h).

Certain statutory changes to the IDEA took effect on July 1, 2005.  Plaintiffs' claims in this case relate to both the 2004-2005 and 2005-2006 academic years.  *See* Individuals With Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Tit. III, sec. 302(a)(1), 118 Stat. 2647, 2803.  Thus, the newly-effective statutory provisions are applicable only to Plaintiffs' claims with respect to the 2005-2006 academic year, while the substance of Plaintiffs' claims with respect to the 2004-2005 academic year must be evaluated pursuant to the prior version of the IDEA.

## II.  Background

The facts presented are derived from the administrative record of the due process hearing including the transcript, admitted exhibits, and the administrative law judge's factual findings and are uncontested unless otherwise noted.  Denise was born on June 11, 1994.  She received special education services from MCPS beginning with pre-kindergarten services at age three.  She attended special education language disability classes at Cannon Road Elementary School within the MCPS system, from first grade through third grade, and completed third grade during the 2002-2003 school year.  After that year, MCPS notified Denise's parents that it would no longer offer separate language disability classes, and

instead would integrate students with language disabilities into special education Learning and Academic Disabilities (LAD) classes. At a June 10, 2003 IEP meeting for the 2003-2004 school year, Denise's parents requested placement at a private school, the Baltimore Lab School (the "Lab School"), which serves only special education students.  MCPS denied this request, and Denise's IEP for the 2003-2004 school year included placement in the fourth grade LAD class at William T. Page Elementary School ("Page").  Pursuant to this IEP, Denise attended Melissa Merz's class and received 16 hours of special education services and 1.5 hours of speech therapy each week.

In anticipation of IEP meetings for the 2004-2005 school year, Denise's parents retained an expert, Andrea Bennett, to evaluate Denise and prepare a proposed IEP for the upcoming school year. Ms. Bennett prepared the proposed IEP and report on July 1, 2004. An IEP meeting was held on July 15, 2004.  Because MCPS's representatives at that meeting indicated they had not had time to review Ms. Bennett's proposal, the final determination as to Denise's IEP was postponed to a second IEP meeting, which was held on August 23, 2004.  A draft IEP was proposed at the July 15, 2004 IEP meeting.  MCPS modified this draft before it was approved at the August 23, 2004 IEP meeting to include many goals and objectives identified by Ms. Bennett, but the placement section of both the draft and final versions of Denise's 2004-2005 IEP

indicate placement in the fifth grade LAD program at Page.  The IEP called for Ms. Merz to be Denise's teacher again, and called for 20 hours per week of special education and 1.5 hours per week of speech therapy.  Denise's parents notified MCPS on August 24, 2004, of their intent unilaterally to place Denise at the Lab School. She attended school at Page for the first few days of the 2004-2005 school year before starting classes at the Lab School in September 2004.

Denise's parents informed MCPS prior to the start of the 2005-2006 school year that they were considering returning her to public school, and IEP Team meetings were held to formulate a 2005-2006 IEP on May 12, 2005 and July 18, 2005.  The IEP adopted by MCPS called for Denise to be placed in the sixth-grade LAD program at Benjamin Banneker Middle School ("Banneker"), her geographic home school based on her place of residence.  The 2005-2006 IEP called for Denise to receive special education services including 1.5 hours of speech therapy each week.  Denise's parents rejected this IEP, and filed a request for a hearing with MCPS on September 21, 2005.  Denise was again placed at the Lab School for the 2005-2006 school year.

The hearing requested by Denise's parents was held before Administrative Law Judge Richard O'Connor, of the Maryland Office of Administrative Hearings, beginning on October 18, 2005. Plaintiffs sought reimbursement for expenses including tuition for

the Lab School for the 2004-2005 and 2005-2006 school years
pursuant to the IDEA and the implementing Maryland statute and
regulations.  The administrative hearing continued over the course
of twelve additional days over the ensuing months, and concluded on
March 22, 2006.  Judge O'Connor issued a written decision on April
21, 2006, finding that Plaintiffs were not entitled to
reimbursement because MCPS had offered Denise a FAPE through her
IEPs for 2004-2005 and 2005-2006.

During the course of the administrative hearing, Plaintiffs
presented evidence of standardized testing and her evaluation upon
entry to the Lab School, arguing that it demonstrated that Denise
had not benefitted from her education through MCPS, but had
subsequently benefitted from her placement at the Lab School.  In
his findings of fact, Judge O'Connor summarized this evidence as
follows:

> On or about September 21, 2001, Dr. Meek
> of MCPS administered the Wechsler Intelligence
> Scale for Children III ("WISC-III") to the
> Student.  The Student exhibited a verbal IQ of
> 89 (low average), a performance IQ of 103
> (average), and a full scale IQ of 95 (average)
> (Parent Ex. 19).
> On November 26 and 28, 2001, Sue Senter
> and Christa Gordon of MCPS administered the
> Woodcock-Johnson 3 ("W-J III") Tests of
> Achievement to the Student, with the following
> partial results (Parent Ex. 21):

| TEST | STANDARD SCORE | PERCENTILE |
|------|----------------|------------|
| Total Achievement | 81 | 11 |
| Broad Reading | 85 | 16 |
| Broad Math | 89 | 23 |
| Broad Written Language | 80 | 9 |
| Match Calculation Skills | 90 | 27 |

Written Expression          78          7

On February 7, 2003, Dr. [Vincent P.] Culotta administered the WISC-III, the W-J III Tests of Achievement, and 14 other tests to the Student.

On the WISC-III, the Student achieved a verbal IQ of 85 (low average), a performance IQ of 111 (high average), and a full scale IQ of 97 (average) (Parent Ex. 29).

On the W-J III, the Student achieved the following partial results (Parent Ex. 29):

| TEST | STANDARD SCORE | PERCENTILE |
|---|---|---|
| Total Achievement | 79 | 8 |
| Broad Reading | 70 | 2 |
| Broad Math | 92 | 30 |
| Broad Written Language | 80 | 9 |
| Match Calculation Skills | 95 | 37 |
| Written Expression | 84 | 15 |

On May 2, 2005, Lara R.B. Broughton of the Lab School administered the W-J III Tests of Achievement to the Student, with the following partial results (Parent Ex. 63):

| TEST | STANDARD SCORE | PERCENTILE |
|---|---|---|
| Broad Reading | 83 | 13 |
| Broad Math | 95 | 36 |
| Broad Written Language | 75 | 5 |
| Match Calculation Skills | 91 | 28 |

The percentile rankings of the W-J III are age-normed to compare students of approximately equal ages. Thus, as a child ages, her percentile rank would decrease if she were to answer the same number of questions correctly.

Between Dr. Culotta's testing on February 7, 2003, and Ms. Broughton's testing on May 2, 2005, the Student attended approximately 14 months of classes in MCPS[] and approximately eight and one-half months of classes at the Lab School.

On October 15, 2003, Dr. [Linda E.] Spencer administered a portion of the Phonological Awareness Test ("PAT") to the Student (Parent Ex. 41).

The PAT is primarily a criterion-referenced test, *i.e.*, an inventory of phonological skills a child has acquired or lacks.

The PAT is also used as a norm-referenced test to compare children with their same-age peers.

. . . .

Because Dr. Spencer did not administer the full PAT, no standard score was obtained. The Student's raw score on the portions of the PAT she did take was 87.

The Student took the PAT again on May 25, 2005, at the age of 10 years and 11 months. At that administration the Student took all of the subtests of the PAT and achieved a raw score of 184 (parent Ex. 41).

Ms. Bennett administered the Test of Written Language, Third Edition ("TOWL-3") to the Student on April 29, 2004, when the Student was nine years and 10 months old and in the fourth grade.

The Student scored age equivalents of less than seven years and grade equivalents of below second grade on three of the eight TOWL-3 subtests.  She scored age equivalents of seven years, six months, and grade equivalents of 2.4, on two subtests.  She scored at or above her actual age and grade equivalents on three subtests.  Her overall writing score was at the low end of the below average range, a standard score of 80, with 100 being average.

Ms. Bennett also administered the Gray Oral Reading Test 4 ("GORT-4") on the same date.

The Student's oral reading score was at the low end of the low range, a standard score of 70, with 100 being average.

(ALJ Decision at 16-19 (footnotes and paragraph numbering omitted)).

MCPS produced evidence questioning the reliability of these standardized test scores, and evidence of Denise's educational progress during 2003-2004 at MCPS.  Judge O'Connor concluded that Denise had benefitted at MCPS in 2003-2004, based in large part on samples of her course work submitted by MCPS and on the

observations reported by her classroom teacher, Melissa Merz. (ALJ Decision, at 34-36).   Accordingly, Judge O'Connor concluded that the similar IEPs offered for the 2004-2005 and 2005-2006 school years, which were also very similar to the Lab School's IEPs for Denise, were reasonably calculated to provide her with an educational benefit, and constituted a FAPE. (*Id.* at 43-44).

Plaintiffs also raised a number of objections based on the procedures through which the IEPs were developed.   Judge O'Connor found that proper procedure had not been followed with respect to the educators in attendance at the 2004-2005 IEP Team meeting, but concluded that MCPS nevertheless had offered Denise a FAPE through the IEP it prepared for 2004-2005 and for 2005-2006.

Denise and her parents initiated this case on September 1, 2006, seeking reversal of Judge O'Connor's decision and reimbursement for expenses associated with her placement at the Lab School. (Paper 1).  On February 2, 2007, Plaintiffs filed a motion for summary judgment. (Paper 10).  On March 5, 2007, Defendants filed a cross-motion for summary judgment. (Paper 11).  Defendants ask this court to uphold the administrative decision.

## III.  Standard of Review

In *MM ex rel. DM v. Sch. Dist. of Greenville County,* 303 F.3d 523 (4th Cir. 2002), the United States Court of Appeals for the Fourth Circuit stated the standard of review for motions for summary judgment in IDEA cases:

In a judicial proceeding under the IDEA, a reviewing court is obliged to conduct a modified de novo review, giving "due weight" to the underlying administrative proceedings. In such a situation, findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why. The court is not, however, to substitute [its] own notions of sound educational policy for those of local school authorities . . . .

303 F.3d at 530-31 (citations omitted). General standards of review for summary judgment motions also apply in IDEA cases, as illustrated in *Board of Education of Frederick County v. I.S. ex rel. Summer,* 325 F.Supp.2d 565 (D.Md. 2004):

In addition, the Court's analysis is shaped by the mandate of Rule 56(c) of the Federal Rules of Civil Procedure that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "When the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.,* 820 F.2d 98, 101 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)). The Court's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant resolution of the matter at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Where, as here, cross-motions for summary judgment are filed, a

> court must "evaluate each party's motion on
> its own merits, taking care [. . .] to draw
> all reasonable inferences against the party
> whose motion is under consideration." *Mingus*
> [*Constructors*]*, Inc. v. United States,* 812
> F.2d 1387, 1391 (Fed. Cir. 1987).

325 F.Supp.2d at 578.

The party initiating the due process hearing is required to
carry the burden of proof in the administrative hearing. *Schaffer*
*ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 537 (2005).
On appeal, the party challenging the administrative decision bears
the burden of proof. *A.K. ex rel. J.K. v. Alexandria City Sch.*
*Bd.*, 484 F.3d 672, 679 (4th Cir. 2007). "If the administrative
findings were made in a regular manner and have evidentiary
support, they are to be considered *prima facie* correct." *Cavanagh*,
75 F.Supp.2d at 457 (citing *Doyle v. Arlington County Sch. Bd.,* 953
F.2d 100, 103 (4th Cir. 1991)). Moreover, in giving due weight to
the findings of the ALJ, this court owes deference to the ALJ's
determinations of the credibility of witnesses.   "'[T]he
fact-finder, who has the advantage of hearing the witnesses, is in
the best position to assess credibility.'" *Justin G. ex rel. Gene*
*R. v. Bd. of Educ.,* 148 F.Supp.2d 576, 588 (D.Md. 2001) (quoting
*Bd. of Educ. of Montgomery County v. Hunter ex rel. Hunter,* 84
F.Supp.2d 702, 706 (D.Md. 2000)); *see also Doyle,* 953 F.2d at 104.

## IV.  Substance of FAPE

Plaintiffs argue that the 2004-2005 and 2005-2006 IEPs did not
offer Denise a FAPE. During the administrative hearing, Judge
O'Connor found that Denise had made progress under her 2003-2004

MCPS IEP (ALJ Decision at 36) and was reasonably likely to make progress again under the IEPs offered by MCPS for 2004-2005 and 2005-2006 (*id.* at 39, 42-44).   Judge O'Connor's factual findings resolve all factual issues regarding the substantive appropriateness of Denise's IEPs.   As discussed in detail below, those findings are entitled to be considered *prima facie* correct and, even drawing any possible inferences in her favor, Plaintiffs have not met their burden to demonstrate a reason to depart from those factual findings.

## A.   Regularity of ALJ's Findings of Fact

Plaintiffs argue that Judge O'Connor's findings of fact were not made in a regular manner.   "[I]n deciding what is the due weight to be given an administrative decision . . . a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed."   *Doyle*, 953 F.2d at 105.   The *Doyle* court concluded that a state administrative hearing officer erred in failing to give due weight to the credibility determinations of a local hearing officer who had actually taken direct testimony in that case, and thus afforded the state administrative hearing officer's findings, as to that credibility determination, no weight at all.   *Id.* at 105-06.   The Fourth Circuit has since explained that a district court is not free to disregard a hearing officer's determination of which expert witnesses to credit as irregular for

failing to consider one party's evidence when "the hearing officer's analysis and explanation for the basis of his ruling make it clear that he was not persuaded, and why he was not persuaded by [that party's] evidence." *County Sch. Bd. of Henrico County, Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 304-07 (4th Cir. 2005).

First, Plaintiffs assert that it was improper for Judge O'Connor to rely on testimony by Ted Culler, a speech-language pathologist for MCPS, regarding interpretation of educational progress and particularly interpretations of standardized testing because this testimony was outside the scope of his expertise and contradicted testimony of Dr. Culotta.   Plaintiffs base this argument on the observation that Dr. Culotta was the only accepted expert "in neuropsychology and learning disabilities" at the administrative hearing, while Mr. Culler was certified as an expert in "speech-language pathology."   (ALJ Decision, at 11-12). Plaintiffs assert that because he credited Mr. Culler's testimony, Judge O'Connor under-relied on standardized and particularly age-normed test results in his determination of whether MCPS's IEPs offered Denise a FAPE.

Judge O'Connor considered the conflicting testimony provided by the experts called by both parties, and expressly stated that he found Mr. Culler's explanation of standardized testing and other means of assessing Denise's academic progress particularly convincing and illuminating:

> On behalf of MCPS, Ted Culler testified as an expert in speech-language pathology.  He demonstrated great familiarity with all the

standardized tests administered to the Student over the years.  The main point of Mr. Culler's testimony was that, while such tests are useful to determine a student's inventory of skills, they should not be used to develop an educational plan.  According to Mr. Culler, a large drop in a score usually indicates some problem, but probably not bad instruction. More important to developing an IEP are classroom observations and the child's day-to-day performance.

Mr. Culler also pointed out several mathematical errors in Dr. Spencer's comparison of the PAT she administered in 2003 with that administered by Ms. Bennett in 2005. His testimony created significant questions about the validity of both tests. Specifically, Mr. Culler showed that Dr. Spencer did not administer large portions of the PAT on [sic] 2003, so comparison with the entire test given in 2005 was of limited value.  Dr. Spencer also significantly under-reported the Student's scores on the subtests she did take.  Furthermore, the PAT is normed only up to age nine years and 11 months; the Student was 10 years and 11 months old when she took it in 2005.  According to Mr. Culler, this renders the results entirely invalid.

It is also important to consider that the Student took the W-J III with Dr. Cullotta in February of 2003.  She remained enrolled in MCPS until September of 2004 and received at least 12 more months of instruction from MCPS. Therefore the fact that her Broad Reading score had declined 15 points in 2003 is of little use in determining how much progress she may have made with MCPS after that test.

*I found Mr. Culler's testimony on these points well-founded and entirely credible.  He showed a wealth of knowledge of standardized testing that was lacking in the testimony of the Parents' experts.*

I am convinced that the Student's scores on these tests . . . are useful information but not sufficient as a basis for designing the Student's educational plan.  Several other factors, such as classroom observations, the Student's classroom work, and informal assessments, must also be given considerable weight in deciding how the Student can best achieve educational progress.

15

(ALJ Decision, at 33-34 (emphasis added)).

Judge O'Connor's decision to credit Mr. Culler's testimony as to the reliability of standardized and age-normed testing for designing Denise's IEP reflects a determination of credibility that must be respected by this court. *See Justin G.*, 148 F.Supp.2d at 588; *Doyle*, 953 F.2d at 104. Plaintiffs assert that this testimony was outside the scope of Mr. Culler's expertise, but this argument contradicts Judge O'Connor's finding that Mr. Culler "showed a wealth of knowledge of standardized testing that was lacking in the testimony of the Parents' experts." (ALJ Decision, at 34). Plaintiffs' argument provides no basis for a determination that Judge O'Connor failed to make findings of fact in this case in a regular manner.

Plaintiffs also suggest that Judge O'Connor's findings were not regularly made because he ignored evidence in their favor, specifically Denise's significant progress at the Lab School and the similarity of the 2004-2005 and 2005-2006 IEPs to prior IEPs provided by MCPS that Plaintiffs allege were failures. Judge O'Connor correctly refused to consider the significant progress Denise made while at the Lab School as persuasive evidence that she did not previously receive appropriate special education programming through MCPS.

> In this case, there has been evidence presented that the Student is making good progress at the Lab School. I have no doubt that this is true. But, as pointed out [in *Hessler v. State Bd. of Educ. of Md.*, 700 F.2d 134, 139 (4th Cir. 1983),] this does not mean that the Student would not also make progress under the MCPS IEP. The question is not which

16

placement would produce more educational progress . . . .

(ALJ Decision, at 39).   Judge O'Connor's refusal to consider Denise's progress at the Lab School as persuasive evidence that she would not have made sufficient progress at MCPS was proper, *see Justin G.*, 148 F.Supp.2d at 588 (citing *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 983 (4th Cir. 1990); *Hessler*, 700 F.2d at 139 (4th Cir. 1983)), and does not provide any basis for a finding that Judge O'Connor engaged in an irregular method of factfinding. Likewise, because Judge O'Connor concluded that Denise had made educational progress at MCPS in 2003-2004, (ALJ Decision, at 36), it was proper to reject any argument criticizing the challenged IEPs for similarity with Denise's MCPS IEP for 2003-2004. Plaintiffs' argument to the contrary improperly challenges Judge O'Connor's determination that Denise made educational progress through MCPS programs, and his view of the relative credibility of the expert testimony, test results, and work samples that formed the basis for this determination.   *See Justin G.*, 148 F.Supp.2d at 588; *Doyle*, 953 F.2d at 104.

Plaintiffs also challenge the regularity of Judge O'Connor's fact finding by arguing that he failed to reach any findings of fact as to whether MCPS predetermined Denise's placement in formulating either challenged of the IEPs and was insufficiently precise in reporting the timing of MCPS's decisions regarding Denise's placement.   Judge O'Connor identified the "major complaint" concerning the 2005-2006 school year to be the purported predetermined placement at BBMS and concluded that with respect to

17

that school year, "[t]here is . . . no evidence that MCPS insisted on an inappropriate placement for the Student."  Although not explicit, this language suggests that Judge O'Connor found that there had been no predetermination of Denise's 2005-2006 placement. Regardless, Judge O'Connor concluded as a matter of law that any procedural violation was immaterial because the substance of the 2004-2005 and 2005-2006 IEPs offered Denise a FAPE. (ALJ Decision, at 39, 41, 43).  Regardless of whether this legal conclusion was correct, it provides a logical basis for any failure to reach precise findings of fact as to predetermination, and thus undermines Plaintiffs' argument that Judge O'Connor's findings of fact were not regularly made.

Finally, Plaintiffs assert that Judge O'Connor's factual findings were not made in a regular manner because, they allege, his decision misstates some material factual details of the case based on the evidence that was presented during the administrative hearing.  Judge O'Connor found that Ms. Bennett's proposed IEP, which was prepared on July 1, 2004, had not been received by MCPS on July 15.  (ALJ Decision at 13 ¶ 14).  Plaintiffs contend that this finding was in error because the evidence at the administrative hearing indicated only a conflict as to whether MCPS received the report on July 13 or July 14, 2004.  Any dispute about the date this document was received is minor and immaterial to the relevant issues at the administrative hearing.  There is no dispute that MCPS had received the proposed IEP, and a document relating to goals and objectives, prior to the August 23, 2004 IEP Team meeting

18

at which Denise's 2004-2005 IEP was approved.  Assuming, for the sake of argument, that Plaintiffs are correct that Judge O'Connor's opinion misstates this fact, Plaintiffs have not identified any authority for the proposition that such a minor factual error in a lengthy written opinion would support a finding that an administrative law judge's other factual findings were not regularly made.  This minor factual error would not implicate the manner and methods of fact-finding, through careful review of the testimony and determinations of relative credibility of the witnesses, that characterize the remainder of Judge O'Connor's opinion.  Accordingly, it provides no basis for a finding that Judge O'Connor's findings of fact were not regularly made.  *Doyle*, 953 F.2d at 105.

**B.  Factual Findings as to Appropriateness of IEPs**

Because Judge O'Connor's factual findings were regularly made, these findings, including his finding that each IEP was reasonably calculated to provide Denise with an educational benefit, must be viewed as *prima facie* correct.  *MM ex rel. DM*, 303 F.3d at 531.  It remains, however, for this court to reach its own *de novo* determination of the facts, giving "due weight" to Judge O'Connor's findings, and to explain any deviation from those findings.  *Id.* at 530-31.

Plaintiffs' argument that Judge O'Connor under-relied on standardized and age-normed test results and that Denise was classified as a non-reader upon enrollment at the Lab School provide no basis for departure from Judge O'Connor's findings.  As

19

discussed above, these arguments merely challenge Judge O'Connor's determination as to the relative credibility of the testimony of the parties' expert witnesses as to the relative weight to be afforded to different indicators of Denise's academic skills and progress.   Judge O'Connor also concluded that there is a marked improvement in the samples of Denise's schoolwork provided by MCPS and credited Ms. Merz's testimony about the quality of Denise's reading skills at the end of the 2003-2004 school year.   (ALJ Decision at 36).   Judge O'Connor's decision to accept Mr. Culler's testimony, that standardized tests should not be afforded great weight in drafting an IEP (ALJ Decision at 33-34), and his resulting conclusion that Denise would have benefitted from her MCPS IEPs in 2004-2005 and 2005-2006, must be afforded due weight.

## V.   Procedural Safeguards

Plaintiffs also assert that MCPS violated the IDEA and its implementing regulations by predetermining her placement in 2004-2005 and 2005-2006, by failing to have a general education teacher attend her 2004-2005 IEP Team meetings, and by allowing persons with limited knowledge of her conditions to determine her placement for 2005-2006.   The parties dispute the substance of these allegations and also dispute the legal standard applicable to determine whether any of these alleged procedural violations denied Denise a FAPE.   As discussed below, even drawing all inferences in Plaintiffs' favor, they have not met their burden to demonstrate that any of the alleged procedural violations could support their cause of action for reimbursement.

20

## A.   Predetermination of 2004-2005 Placement

Plaintiffs allege that MCPS improperly predetermined Denise's placement at Page for the 2004-2005 school year prior to conducting the IEP Team meetings, and then wrote an IEP to justify that placement.  A placement decision under the IDEA may not be made in advance of an IEP Team meeting, because the placement decision must be "based on the child's IEP."  34 C.F.R. § 300.116(b)(2).  The Fourth Circuit has held that predetermination of a student's placement violates the procedural requirements imposed by the IDEA's then-applicable statutory predecessor, the Education of All Handicapped Children Act.  *Spielberg ex rel. Spielberg v. Henrico County Public Sch.*, 853 F.2d 256, 258-59 (4th Cir. 1988).  The parties dispute, however, whether a showing that MCPS violated IDEA and its implementing regulations by predetermining Denise's placement for the 2004-2005 school year is a sufficient basis for reimbursement, or whether, in order to prevail, Plaintiffs must also show that any procedural violation deprived Denise of a FAPE.

As will be discussed later in this opinion, "predetermination" as prohibited by the IDEA means something more than consideration of a proposed placement prior to the IEP meeting.  It also can take different forms and perhaps be present to differing degrees.  For instance, school authorities have been faulted for determining a placement and then developing an IEP to carry out that decision, as in *Spielberg*, or for only proposing one placement option and being unwilling to consider alternatives.  The seriousness of the

"predetermination" may already entail a finding that the parents'
rights of participation are infringed.  For example, the *Spielberg*
court held, without separate analysis, that the predetermination in
that case was sufficient to constitute denial of a FAPE.  *Id.* at
259 (citing *Hall ex rel. Hall v. Vance County Bd. of Educ.*, 774
F.2d 629, 635 (4th Cir. 1985) (holding that a procedural violation
of IDEA can constitute denial of a FAPE)).

Beginning in 1997, the Fourth Circuit has made clear that,
ordinarily, procedural violations of IDEA are subject to a
harmlessness analysis.  The Fourth Circuit has explained that it

> took the opportunity in *Gadsby [ex rel. Gadsby
> v. Grasmick]* to clarify [its] holding in *Hall*
> as follows: "However, to the extent that the
> procedural violations did not actually
> interfere with the provision of a free
> appropriate public education, these violations
> are not sufficient to support a finding that
> an agency failed to provide a free appropriate
> public education."

*DiBuo ex rel. DiBuo v. Bd. of Educ. of Worcester County, Md.*, 309
F.3d 184, 190 (4th Cir. 2002) (quoting *Gadsby ex rel. Gadsby v.
Grasmick*, 109 F.3d 940, 956 (4th Cir. 1997)).  The Fourth Circuit
has recently reiterated that "under our circuit precedent, a
violation of a procedural requirement of the IDEA (or one of its
implementing regulations) must actually interfere with the
provision of a FAPE before the child and/or h[er] parents would be
entitled to reimbursement relief[,]" even when the procedural
violation "interfere[s] with the parents' ability to participate in
the development of their child's IEP." *DiBuo*, 309 F.3d at 190-91

(4th Cir. 2002); *see also A.K. ex rel. J.K.*, 484 F.3d at 679 n.7 (noting that procedural violations are subject to "harmlessness" analysis, while substantive violations of the IDEA are not).

Plaintiffs cannot prevail on this argument because they did not properly preserve it for review during the administrative hearing.  An allegation that a school district violated the IDEA may only be considered by a reviewing court if that issue was first presented and preserved before the administrative law judge at the administrative hearing.  *A.K. ex rel. J.K.*, 484 F.3d at 679 n.7 (citing *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 424 (1st Cir. 1985) ("[F]or issues to be preserved for judicial review they must first be presented to the administrative hearing officer.").  This limitation serves the same purpose as the limitations that apply to the presentation of additional evidence before a district court in a case under the IDEA, which are intended to avoid "reduc[ing] the proceedings before the state agency to a mere dress rehearsal." *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998).  An allegation of a violation of IDEA may only be presented in an administrative hearing, in turn, if the allegation was listed in the hearing request notice required by 20 U.S.C. § 1415(b)(7) or if the parties at the administrative hearing agree to the presentation and determination of additional issues.  "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the

notice filed under subsection (b)(7) of this section, unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B).

Denise and her parents did not allege in their hearing request that MCPS predetermined Denise's 2004-2005 placement; with respect to the 2004-2005 school year they argued only that the placement and programming offered by MCPS were similar to her past IEPs and that she had not made academic progress under those plans. (Board Ex. 35, at 6-7). Plaintiffs contend that the hearing request nevertheless adequately raised the issue of predetermination because the request alleged that MCPS failed to provide Denise a FAPE for 2004-2005. (*Id.*). Plaintiffs argue that this allegation implicitly asserts any possible violation of IDEA that could amount to denial of a FAPE. This argument proves too much. Under such a rationale, no specific allegation of an IDEA violation would have to be raised explicitly in an IDEA administrative hearing request. Such an interpretation would render section 1415(f)(3)(B) a nullity, and contravenes the plain meaning of its language, requiring issues to be raised in the administrative hearing notice if they are to be raised, other than by mutual consent, in the administrative hearing. Because predetermination of Denise's 2004-2005 placement was not specifically raised in Plaintiffs' administrative hearing request, Plaintiffs could not properly raise this issue at the administrative hearing, "unless the other party[, MCPS,] agree[d] otherwise." 20 U.S.C. § 1415(f)(3)(B).

Plaintiffs next contend that the issue of predetermination was raised without any objection during the hearing when Debra Berner, Principal and IEP chairperson at Page, was asked questions on re-cross examination regarding when Denise's placement for 2004-2005 was determined. (Tr. at 2095-96). Plaintiffs' closing argument at the administrative hearing argued, for the first time, that Denise's 2004-2005 placement had been predetermined. (Tr. at 2077-81). Although MCPS did not interrupt Plaintiffs' closing argument with an objection that this argument had not been raised in the hearing request, MCPS did argue in its closing argument that Plaintiffs had raised this procedural issue for the first time in their closing argument. (Tr. at 2712). MCPS also points out that Plaintiffs did not raise this issue in their opening argument during the administrative hearing, (tr. at 6-12), which asserted predetermination only with respect to the 2005-2006 IEP (tr. at 11). Because Plaintiffs' mention of this argument came only during closing argument and because MCPS argued against consideration of the issue during its closing, predetermination was not presented by Plaintiffs at the administrative hearing with the agreement of MCPS, as required by section 1415(f)(3)(B). Judge O'Connor did not explicitly address predetermination with respect to the 2004-2005 school year in his decision, and the issue has not been preserved for review before this court.

Furthermore, even assuming that Plaintiffs had properly preserved this issue and presented adequate evidence[3] of predetermination of Denise's placement at Page for 2004-2005, Plaintiffs could not demonstrate that any predetermination denied Denise a FAPE.  As Judge O'Connor properly found (ALJ Decision at 39, 43), and, as discussed above, Page was an appropriate placement as part of Denise's 2004-2005 IEP, which offered Denise a FAPE.

## B.  Predetermination of 2005-2006 Placement

Plaintiffs also argue that MCPS predetermined Denise's placement at Banneker for the 2005-2006 school year and then wrote an IEP to justify that placement.  Judge O'Connor found that Plaintiffs had introduced "no evidence that MCPS insisted on an inappropriate placement" for the 2005-2006 school year.  (ALJ Decision, at 41).  Plaintiffs argue that Judge O'Connor applied the wrong legal standard because, they contend, changes to the IDEA enacted in 2004 and effective as of July 1, 2005 have implemented a less demanding standard for proving that a procedural violation under IDEA was not harmless.  Newly-effective language within IDEA, applicable to the 2005-2006 school year in this case, under the heading "Procedural Issues" provides:

> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies–

---

[3] The oblique and ambiguous references to "Page" cited by Plaintiffs fall well short of establishing predetermination.

> (I) impeded the child's right to a free
> appropriate public education;
>
> (II) significantly impeded the parents'
> opportunity to participate in the
> decisionmaking process regarding the provision
> of a free appropriate public education to the
> parents' child; or
>
> (III) caused a deprivation of educational
> benefits.

20 U.S.C. § 1415(f)(3)(E)(ii). Although neither the Fourth Circuit nor this court has previously interpreted this language, at least one court has observed that this language may permit a finding that a FAPE was denied based on a serious procedural violation infringing parents' rights to participate in formulation of an IEP even if the IEP ultimately formulated is otherwise appropriate. *See Hjortness v. Neenah Joint Sch. Dist.*, Nos. 05-C-0648, 05-C-0656, 2006 WL 1788983, at *5-*6 & n.4 (E.D.Wis. June 27, 2006) (finding that the procedural violation in that case did not substantially infringe the parents' participation).

It is not necessary at this time to determine the effect of section 1415(f)(3)(E)(ii) upon the harmlessness analysis applicable to procedural violations under the IDEA because Plaintiffs have not met their burden of establishing that the school district improperly predetermined Denise's placement for 2005-2006. The parties agree that

> school officials must come to the IEP table
> with an open mind. But this does not mean
> they should come to the IEP table with a blank
> mind. . . . [W]hile a school system must not
> finalize its placement decision before an IEP

> meeting, it can, and should, have given some
> thought to that placement.

*Doyle v. Arlington County Sch. Bd.*, 806 F.Supp. 1253, 1262 (E.D.Va.
1992), *aff'd*, 93 F.2d 1176 (4th Cir. 1994) (Unpublished
Disposition).  Plaintiffs assert that the record contains both
direct evidence that Denise's placement for 2005-2006 at Banneker
was predetermined and circumstantial evidence which allegedly
supports an inference of predetermination.

Direct evidence establishes that Denise's placement at
Banneker was at least contemplated before her IEP was finalized.
An MCPS summary of the May 12, 2005 IEP Team meeting mentions this
placement, indicating, as required follow-up: "Schedule any
required IEP team meeting[:] next mtg. to develop IEP for 2005-06
school yr. and placement decisions (Banneker/Page)." (Parents' Ex.
64).  Plaintiffs also highlight the testimony of Ms. Berner and
Gail Mroczka, the special education resource teacher at Page, at
the administrative hearing.  Ms. Berner testified during her direct
examination that ". . . I believe that the social and emotional
goals were included for -- in a lot of ways for us to work on when
she came into Banneker . . . ."  (Tr. at 2044).  On cross-
examination, she was asked whether at the May 12, 2005 IEP Team
meeting "without an IEP you had already determined that Banneker
could meet [Denise's] needs?" and she responded "At that point,
yes." (Tr. at 2084).  Ms. Mroczka also testified about when this
determination was made:

A[nswer]:  . . . We met in May, June, I can't
remember the date of when the – Ms. Walker
contacted us to have an annual review, and
that was where Ms. Harrington came over and
described Banneker, and then the decision was
to go and observe.  They went and observed and
came back, and we met informally via Emails,
that kind of thing, discussing if an IEP was
drawn up, what would the IEP look like because
Ms. Merz would be writing it for Banneker, and
we had contact with Ms. Harrington.
     So I was involved with that preparation.
You're correct, I was not at the [July 18,
2005] meeting, but knowing the preparation
that went into it, I felt comfortable with
what was going to be a possible recommendation
at the meeting because you can't really say
what the recommendation's going be before the
meeting actually occurs.

Q[uestion]:  . . . When did you first come to
the conclusion that Banneker would be
appropriate?  It sounds like it was sometime
between May ––

A[nswer]:  Yes.

Q[uestion]:  Or sometime after that May IEP
meeting but before the July IEP meeting?

A[nswer]:  Correct.

(Tr. at 2411-2412).  Finally, Plaintiffs point out that because
Kathryn Harrington, resource teacher for special education and
special education department chair at Banneker, attended the May
12, 2005 IEP Team meeting and explained the resources available at
Banneker to Denise's parents, a predetermination of placement at
Banneker must have been made prior to that meeting.

The evidence clearly demonstrates that MCPS officials,
including Ms. Harrington, Ms. Berner, and Ms. Mroczka had
considered placement at Banneker, Denise's geographic home school,

prior to the May 12, 2005 IEP Team meeting.  It cannot, however, establish that MCPS predetermined Denise's placement at Banneker, because it does not support an inference that MCPS did not have an open mind as to this suggested placement.  *See Doyle*, 806 F.Supp. at 1262.  Indeed, Ms. Mroczka indicated that placement at Banneker, which she referred to as "a possible recommendation at the meeting" was not final until it was approved as part of Denise's IEP at the July 18, 2005 IEP Team meeting.  (Tr. at 2411).  While the testimony cited above does indicate that MCPS  considered Denise's placement at Banneker before her IEP was approved, it does not indicate that this consideration was not preliminary and flexible, and therefore permissible.

Plaintiffs also argue that MCPS's failure to change Denise's placement or provide her with more than 1.5 hours per week of speech-language therapy, in spite of the discussions at the IEP meetings and the expansion of the goals and objectives contained in the IEP, constitutes circumstantial evidence that her placement for 2005-2006 was predetermined.  The fact that MCPS did not alter its initial view as to Denise's appropriate placement at the IEP Team meeting, cannot, however, be sufficient evidence of predetermination.  Otherwise school districts would always be required to change their placement decisions upon any objection by a student's parents.

Because MCPS agreed to expand the goals and objectives of Denise's IEP to include many additional goals and objectives from

Denise's Lab School IEP for 2005-2006, Plaintiffs contend that the failure to expand her programming accordingly indicates that MCPS was unwilling to deviate from the programming resources available at Banneker.  In making this argument, Plaintiffs rely on testimony that they argue supports an inference that MCPS limited its students to 1.5 hours per week of speech-language therapy.  Mr. Culler testified that he had seen few students who received more than 90 minutes per week of speech-language therapy.  (Tr. at 2213-14).  Julene Cupp, also a speech-language pathologist for MCPS, testified that she did not recall any students receiving more than 90 minutes of speech-language therapy per week from MCPS.  (Tr. at 468).  Thus, Plaintiffs assert that Denise's programming was set based on a policy limitation rather than based on her needs.  Mr. Culler testified, however, that "there is no limit per se" on the number of hours of speech-language therapy available to individual students.  (Tr. at 2214).  Plaintiffs' argument that MCPS maintains such a policy across the board, even if true, provides little support for her argument that her placement at Banneker was predetermined, especially because Denise was receiving the same amount of speech-language therapy, 90 minutes per week, at the Lab School, the alternative placement urged by Denise's parents.[4]  (ALJ Decision, at 15 ¶ 29).

---

[4] Denise's IEP at the Lab School called for more speech-language therapy, but this therapy was not being provided due to cost considerations.  (ALJ Decision, at 15).

Neither the direct nor the circumstantial evidence cited by Plaintiffs provides a convincing basis to conclude that MCPS did not have an open mind about the suggested placement at Banneker that was proposed for Denise at the May 12, 2005 IEP Team meeting. Accordingly, Plaintiffs cannot meet their burden of demonstrating that MCPS violated the IDEA or its implementing regulations.

**C.  Failure of a General Education Teacher to Attend IEP Meetings**

Plaintiffs argue that MCPS also violated the procedural requirements of the IDEA's implementing regulations for the 2004-2005 school year because a general education teacher did not attend Denise's IEP Team meetings on July 15 and August 23, 2004. Pursuant to 34 C.F.R. § 300.321(a), "[t]he public agency must ensure that the IEP Team for each child with a disability includes- . . . Not less than one regular education teacher of the child (if the child is, or may be, participating in the regular education environment)[.]"[5]  Plaintiffs argued during the administrative hearing that the 2004-2005 IEP Team did not include a regular education teacher because Ms. Mroczka, who attended the August 23 meeting in this capacity, was not qualified to do so.

Judge O'Connor stated the following facts relating to this claim:

> Ms. Mroczka testified that she has been the special education resource teacher at [Page] for seventeen years.  She described her

---

[5]  This citation for this text in the Code of Federal Regulations has recently changed.  Prior to October 12, 2006, the same text was found at 34 C.F.R. 300.344(a).

> assignment as working with special education
> students mostly in a general education
> classroom, with direct teaching
> responsibilities in several subjects. She is
> certified by the State as qualified to teach
> special education and elementary education.
> On cross-examination, she stated that she
> works as a general education teacher with the
> special education teacher, and that not all
> the children she works with have IEPs. She
> also testified that she was Ms. Merz's mentor
> from 2002-2004, including the year that the
> Student was in Ms. Merz's class. She stated
> that, by her education and experience, she can
> and does function as both a general education
> teacher and a special education teacher, but
> admitted she was not one of the Student's
> general education teachers.

(ALJ Decision, at 25-26). "[A] regular education teacher of the
child," 34 C.F.R. 300.321(a)(2), was required at the IEP Team
meetings because Denise had participated in general education
during the 2003-2004 school year. Judge O'Connor concluded that
"having Ms. Mroczka attend the 2004-2005 IEP meeting as a general
education teacher was technically a violation[,]" apparently
because she was not *Denise's* general education teacher. (*Id.* at
26). Judge O'Connor also concluded, however, that this procedural
violation was harmless under *DiBuo*, 309 F.3d at 190-91.

> In this case, the Parents have presented no
> evidence that failure to have a general
> education teacher at the 2004-2005 IEP
> meetings was detrimental to the Student's
> education in any way. Such a minor procedural
> violation, with no effect on the provision of
> a FAPE, does not require a finding that the
> IEP is not calculated to provide a FAPE. This
> argument by the Parents is rejected.

(*Id.* at 27).

Plaintiffs now argue that Judge O'Connor misapplied the law with respect to his harmlessness conclusion because he failed to follow *Deal v. Hamilton County Board of Education*, 392 F.3d 840 (6th Cir. 2004), *cert. denied*, 126 S.Ct. 422 (2005), and similar cases, and because he failed to consider whether the failure to have a general education teacher on Denise's IEP Team "significantly impeded the parents' opportunity to participate in the decisionmaking process" pursuant to 20 U.S.C. § 1415(f)(3)(E)(ii). In *Deal*, the United States Court of Appeals for the Sixth Circuit held that the school district's failure to have a regular education teacher at a student's IEP Team meetings in violation of the IDEA's implementing regulations denied the student a FAPE, even though "the School System's failure to ensure the attendance of regular education teachers at the . . . meetings did not cause substantive harm." *Deal*, 392 F.3d at 860. The legal standard employed by the Sixth Circuit for determining when a procedural violation under the IDEA denies a student a FAPE and gives rise to a reimbursement remedy, however, is substantially broader than the harmlessness standard employed in this circuit. *Compare Deal*, 392 F.3d at 860-61 (finding that school district denied FAPE by procedural violation despite finding that violation caused no substantive harm), *with DiBuo*, 309 F.3d at 190-91, (requiring that a procedural violation "actually interfere with the provision of a FAPE" even when the procedural violation "interfere[s] with the parents' ability to participate in the development of their child's IEP.").[6]

---

[6] Plaintiffs also rely on *W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1485 (9th Cir. 1992). Like the Sixth Circuit in *Deal*, the United States Court of Appeals for the
(continued...)

Likewise, it is not at all clear that the "significantly impeded the parents' opportunity to participate in the decisionmaking process" standard of 20 U.S.C. § 1415(f)(3)(E)(ii) is applicable to this violation, and, in any event, Plaintiffs cannot meet their burden of showing that the parents' participation rights were significantly impeded by the lack of a general education teacher on the IEP Team.   Section 1415(f)(3)(E) was enacted as part of the 2004 IDEA amendments, and, because it became applicable on July 1, 2005, it was not applicable during the 2004-2005 school year at the time of the procedural violation of the IDEA regulations at issue.   Furthermore, given facts set out in Judge O'Connor's decision regarding Ms. Mroczka's qualifications, which Plaintiffs have not challenged, although she was not Denise's general education teacher, Ms. Mroczka was well-qualified to discuss the merits of Denise's exposure to a general education setting.   There is no evidence that Denise's parents sought to introduce or obtain any information at the IEP Team meetings that was unavailable because Ms. Mroczka was not Denise's general education teacher.   Indeed, as Judge O'Connor found, Ms. Mroczka had the opportunity to observe Denise's classroom performance regularly during the 2003-2004 school year. (ALJ Decision, at 34).

**D.   Placement Chosen by Individuals Unfamiliar with Plaintiff**

---

[6](...continued)
Ninth Circuit applies a different standard for harmlessness than that employed by the Fourth Circuit.   Thus, its conclusion in *W.G.* that predetermination can result in denial of a FAPE even without the loss of educational opportunity has no bearing on this case. *Id.*   Despite contrary holdings by other courts, it is clear in this circuit that a procedural violation under IDEA can give rise to a claim for repayment of tuition only if the resulting IEP did not constitute a FAPE. *DiBuo*, 309 F.3d at 190-91.

Finally, Plaintiffs assert that the decision regarding Denise's 2005-2006 IEP was made by individuals who were not familiar with her and with her individual needs, in violation of procedures specified in the IDEA's implementing regulations. Plaintiffs contend that because Denise's former teachers at MCPS did not attend her 2005-2006 IEP meetings, and because the recommendations of Plaintiffs' experts and the teachers from the Lab School regarding placement were not accepted, the placement decision for Banneker was made by individuals who were not knowledgeable about her needs. Pursuant to 34 C.F.R. § 300.116(a)(1), "[i]n determining the educational placement of a child with a disability, . . . each public agency must ensure that . . . the placement decision . . . is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options . . . ."

It is not apparent that this issue was properly raised during the administrative hearing, and Judge O'Connor did not address the issue in his decision.  It is also far from clear that Plaintiffs have established a violation of this regulation, given that the placement decision was made at an IEP Team meeting attended by Denise's parents and their experts, including teachers from Denise's private school.  Even if Plaintiffs have adequately demonstrated that MCPS violated this regulation, however, any such violation would be harmless under either *DiBuo* or 20 U.S.C. § 1415(f)(3)(E)(ii).  Judge O'Connor properly determined, as discussed above, that the placement at Banneker reflected in Denise's 2005-2006 IEP was appropriate and that the overall IEP

offered Denise a FAPE.   (ALJ Decision, at 42-43).   Accordingly, Plaintiffs cannot demonstrate that any defect in the procedure by which this placement was determined "actually interfere[d] with the provision of a FAPE." *DiBuo*, 309 F.3d at 190.   Plaintiffs do not explicitly argue that this procedural violation significantly impeded the parents' opportunity to participate in the decisionmaking process pursuant to 20 U.S.C. § 1415(f)(3)(E)(ii), but any violation falls short of that standard.   Denise's parents discussed Denise's educational needs and the appropriateness of her placement at Banneker during two meetings of Denise's IEP Team and presented the views of their education experts.   Thus, any lack of knowledge about Denise's unique needs by MCPS staff did not significantly impede Denise's parents from participating in the decisionmaking process.

## VI.  Conclusion

For the foregoing reasons, summary judgment will be entered against Plaintiffs and in favor of Defendants.  Accordingly, Plaintiffs' motion for summary judgment and request for a hearing regarding the motions for summary judgment will be denied.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
